IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

CAROLYN LENORE ARNETT                                          PETITIONER
ADC #706556

V.                              NO. 5:02CV00469 JWC

LARRY NORRIS, Director,                                        RESPONDENT
Arkansas Department of Correction

<u>MEMORANDUM OPINION AND ORDER</u>

       Carolyn Lenore Arnett, an Arkansas Department of Correction (ADC) inmate, brings

this 28 U.S.C. § 2254 petition for writ of habeas corpus (docket entry #1), as supplemented

by Petitioner and her appointed counsel (docket entries #12, #15).  Respondent concedes

(docket entries #8, #18) that Petitioner is in his custody and has exhausted all nonfutile

state remedies.  <u>See</u> 28 U.S.C. § 2254(a) & (b).  Because Petitioner's claims are

procedurally barred or without merit, the petition must be dismissed.[1]

I.
<u>Background</u>

       On October 4, 1997, two murders occurred in Greene County, Arkansas.  The

victims were G.I. Higgins and Danny Rogers.  Higgins was murdered that morning at his

place of business in Paragould.  Rogers was murdered in his van on a gravel road in

Paragould after dark, and his van and body were then moved to a rural location about two

to three miles outside of Paragould.  On December 17, 1997, Edward Ferguson was

arrested in Paragould for an unrelated theft, and he was placed in the Greene County jail.

He escaped on February 14, 1998.

---

[1]The parties have consented to the jurisdiction of the Magistrate Judge (docket entry #21).

On February 19, 1998, Petitioner was located at a payphone just over the state line in Missouri and told law enforcement officers that Ferguson could be found in a motel in Kennett, Missouri.  According to Greene County Sheriff Dan Langston, Petitioner said she was afraid of Ferguson and wanted to see her children in Paragould.  For those two reasons, she asked for transportation back to Arkansas.  The local police chief obliged, while Sheriff Langston left to find Ferguson.  When Petitioner arrived in Arkansas, she was arrested by a Greene County sheriff's deputy for assisting in Ferguson's escape.  Ferguson was also located and arrested the same day.  At that time, neither Petitioner nor Ferguson was a suspect in the deaths of Higgins or Rogers.

In the two days after her arrest, Petitioner gave four statements to law enforcement officers in Greene County.  She told the officers that Ferguson killed Higgins and Rogers, and she took investigating officers to the place where Rogers was murdered and to locations where evidence relating to both murders had been disposed of or destroyed. (See R. 400-26, 444-69, 482-562, 571-84, 861-68.)[2]  On February 23, she was charged with one count of hindering the apprehension or prosecution of Ferguson and with one count of capital murder as to Rogers.[3]

Before Petitioner's trial, her attorneys filed a motion to suppress her statements due to an allegedly illegal arrest in Missouri and a second motion to suppress based on unnecessary delay in bringing her before a circuit judge for her first appearance under Ark. R. Crim. P. 8.1.  (R. 107-23.)  Following a hearing, both motions were denied.  (R. 741-

---

[2]All record references are to the transcript of Petitioner's state court proceedings, submitted by Respondent as an attachment to docket entry #20.  Unless otherwise indicated, Respondent's other exhibits are attached to docket entry #8.

[3]She was never charged with participating in the Higgins murder.

2

813.)  Petitioner also filed a motion to require the state to reveal any agreements that had been entered into between the state and prosecution witnesses.  (R. 78-79.)  At a pretrial hearing several weeks before trial, the prosecutor stated that there were no such agreements.  (R. 736-37.)

In June 1999, Petitioner was tried before a Greene County Circuit Court jury and found guilty on both counts.  She was sentenced to life imprisonment without parole for the murder and sixty years for hindering apprehension, to be served concurrently.  (R. 138-140.)

In a direct appeal to the Arkansas Supreme Court, Petitioner raised the following claims: (1) the evidence at trial was insufficient to support her convictions; (2) her statements should have been suppressed due to an illegal arrest; (3) Ferguson's testimony that she was present at the Higgins murder was improperly admitted as a prior bad act in violation of the Arkansas rules of evidence; and (4) there was an unnecessary delay before she was taken before a judge following her arrest.  Her convictions were affirmed.  Arnett v. State, 27 S.W.3d 721 (Ark. 2000) (Arnett I).

Petitioner then filed a timely petition for post-conviction relief pursuant to Ark. R. Crim. P. 37, alleging (1) that her trial attorneys were ineffective for failing to subpoena a judge as to his availability for a prompt first appearance, and then failing to seek suppression of her statements due to a violation of Ark. R. Crim. P. 8.1; and  (2) that the prosecuting attorneys had a bargain with a witness against her (Ferguson) and permitted him to commit perjury.  Her Rule 37 petition was denied as without merit.  State v. Arnett, Nos. CR-98-42B, CR-98-44 (Greene Co. Cir. Ct.  Nov. 27, 2000) (Resp't Ex. A).  The decision was affirmed on appeal in an unpublished opinion.  Arnett v. State, No. CR 01-

3

265, 2002 WL 159874 (Ark. Sup. Ct. Jan. 31, 2002) (Resp't Ex B) (Arnett II).  There is no

evidence or allegation that Petitioner sought any further post-conviction relief in state court.

Petitioner then filed this federal habeas petition, advancing the following claims:

1.       Her conviction was obtained pursuant to an unlawful arrest;

2.       The prosecutor engaged in misconduct by withholding the knowledge of a deal offered to her accomplice in exchange for his perjured testimony;

3.       The state unduly interfered with her appellate and post-conviction proceedings; and

4.       Her trial and appellate counsel were ineffective.

Respondent asserts that Petitioner's first claim is without merit and that the

remaining claims are procedurally defaulted because she failed to properly present them

to the state courts.  See Coleman v. Thompson, 501 U.S. 722 (1991).  Petitioner filed a pro

se response to these arguments, which her appointed counsel then supplemented.  The

Court will first discuss the procedural default issues.

II.
Procedural Default

The state courts should have the first opportunity to review federal constitutional

issues and to correct federal constitutional errors made by the state's trial courts.

O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999).  A federal habeas petitioner is thus

required to pursue all available avenues of relief in the state courts before the federal

courts will consider a claim.  28 U.S.C. § 2254(b) & (c).  He must fairly present "the same

factual grounds and legal theories" of his federal claims to the highest state court.  Wemark

v. Iowa, 322 F.3d 1018, 1021 (8th Cir.), cert. denied, 540 U.S. 870 (2003); Miller v. Lock,

108 F.3d 868, 871 (8th Cir. 1997).  He must present his claims to the state courts in a

4

timely and procedurally correct manner so that the courts will be able to review the merits of the claims.  Kennedy v. Delo, 959 F.2d 112, 115 (8th Cir. 1992).  Failure to do so will result in a procedural default.  Id.

Where a procedural default has occurred, federal habeas review is permitted only if the petitioner can demonstrate (1) cause for the default and actual prejudice as a result of the alleged violation of federal law,[4] or (2) that failure to consider the claims will result in a fundamental miscarriage of justice, that is, that a constitutional violation has resulted in the conviction and continued incarceration of one who is actually innocent.  Coleman, 501 U.S. at 750; Murray v. Carrier, 477 U.S. 478, 496 (1986).

III.
Ground 2: Prosecutorial Misconduct

A.    Arguments.

Petitioner contends that the prosecutor engaged in misconduct by withholding information from her about a deal offered to her accomplice, Edward Ferguson, in exchange for his perjured testimony.  She says that Ferguson's first statement absolved her but that, after the prosecutor agreed to "take it easy" on Ferguson, to let Petitioner go and to forego seeking the death penalty, Ferguson "cooperated" with the prosecutor by changing his statement.  Petitioner says this "deal" was detailed in a letter from Ferguson, which she received about October 12, 2000.

In support of this claim, Petitioner cites Giglio v. United States, 405 U.S. 150 (1972).  Giglio held that, when the reliability of a witness's testimony may well be determinative of

---

[4]Where no cause has been shown, the prejudice element need not be addressed.  McCleskey v. Zant, 499 U.S. 467, 502 (1991).

the guilt or innocence of a defendant, due process requires the prosecutor to disclose any promises of leniency made to that witness in exchange for testimony. Id. at 153-55. To be entitled to relief on a Giglio claim, a finding of materiality is required pursuant to Brady v. Maryland, 373 U.S. 83 (1963). Giglio, 405 U.S. at 154. This means the defendant must show "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Kyles v. Whitley, 514 U.S. 419, 433-34 (1995).

Respondent asserts that this claim is procedurally defaulted. Petitioner raised the claim in her Rule 37 post-conviction proceedings,[5] but the Arkansas Supreme Court declined to review it stating that it was not a proper post-conviction claim and instead should have been raised on direct appeal. Arnett II, supra at *2.

B.    Cause.

Cause requires a showing of some impediment, external to the defense, preventing a petitioner from presenting or developing the factual or legal basis of a claim. Murray, 477 U.S. at 488-89, 492. Petitioner contends that she could not have raised this claim earlier because she did not know about it until she received a copy of Ferguson's letter in October 2000, which was after her appeal was concluded. The Court agrees with the general principle that a habeas petitioner can establish cause for a procedural default where the

---

[5]The Rule 37 trial court characterized Petitioner's claim as an allegation that the prosecuting attorney "had a bargain with a witness against the defendant and 'permitted him to commit perjury while testifying in Arnett's trial.'" (Resp't Ex. A, ¶ 6.) In the Rule 37 appeal, the Arkansas Supreme Court characterized her claim as arguing: "(1) prosecutors violated her rights by withholding discoverable information; (2) counsel was ineffective for failing to reveal to her certain letters written by her accomplice; and (3) counsel was ineffective for failing to introduce the letters at trial." Arnett II, supra at *2. Neither party has submitted Petitioner's Rule 37 petition, but neither party disputes the characterization of Petitioner's claims by the state courts. It is therefore assumed that the claims presented here regarding the prosecutor's alleged undisclosed deal with Ferguson are the same ones raised in her Rule 37 proceedings.

reason for his failure to develop facts in state-court proceedings was the state's suppression of the relevant evidence.  <u>Banks v. Dretke</u>, 124 S. Ct. 1256, 1272 (2004). However, this does not provide a basis for excusing Petitioner's default for several reasons.

First, as Respondent points out, there is no evidence that a deal existed other than Petitioner's word.  She has not submitted the letter she purportedly received on October 12, 2000,  from Ferguson, nor does she state what the letter contains other than saying that it "proves" her allegation of an undisclosed deal with the prosecutor.

According to the record, as stated earlier, Petitioner's attorneys filed a pretrial motion to require the state to reveal any agreements that had been entered into between the state and prosecution witnesses.  At a hearing several weeks before trial, Petitioner's counsel stated that they had not been provided any information about any deals, and the prosecutor stated that, to his knowledge, "there are no such deals."  (R. 736-37.)

At Petitioner's trial, Ferguson stated that he was testifying because he "want[ed] people to know" and so that a "healing process" could begin, and not because he had been offered any sort of deal by the prosecutors.  (R. 245-46.)  He stated that he wanted to testify against Petitioner and he could not remember whether the prosecutor asked him to testify or whether he brought it up first.  He said he "might have" been the one who suggested it.  (R. 337-38.)   He said he had lied in giving his earlier statements to police and in testifying at his own trial for the Higgins murder.  (R. 243-44, 333, 340-41.) Ferguson did testify that, at the time he gave his statements to police, it was his "understanding" that his cooperation would enable Petitioner to go free.  "That's what I was – I was believing, that if I go ahead and tell them about this, that she would go home." (R.

7

315.)  He admitted on cross-examination that no one told him that or offered him anything for his statements, but his belief was "just something in [his] head."  (R. 321.)  The officers who questioned Ferguson testified that they made no offers of leniency to him in exchange for his cooperation.  (R. 434, 593.)

Although Petitioner says that Ferguson's first statement "absolved her from blame," she has not submitted that statement or any others.  The colloquy at Petitioner's trial between her counsel and Ferguson indicates that, while Ferguson first told police that Petitioner was not involved in the Higgins murder, he did tell them she was present at the Rogers murder.  (R. 321-22, 325-28, 332.)  At her trial, he testified that she was present at both murders; however, she was never charged in connection with the Higgins  murder. While it is clear from the transcript that Ferguson testified at trial to a greater involvement on the part of Petitioner in Rogers' murder than he had indicated in his earlier statements, (see R. 333, 350-51), nothing documents Petitioner's current allegation that he had previously absolved her as to that crime.  In any event, Petitioner's counsel vigorously cross-examined Ferguson about why his testimony at her trial was different from his previous statements and testimony.  He repeatedly stated that he was "tired of lying" and that, because he already had two life sentences for murdering Higgins and Rogers, he had "nothing to lose."  (R. 333-41, 395-96.)

Petitioner's assertion that the state agreed to forego the death penalty in exchange for Ferguson's testimony is also unsupported.  The state did seek the death penalty against Ferguson for the Higgins murder.  He was convicted of that murder by a jury in September 1998 and was sentenced to life imprisonment without parole.  This was nine months before Petitioner's trial.  Ferguson testified at Petitioner's trial that, shortly after the

Higgins trial, he agreed to give up his right to a direct appeal and plead guilty to the Rogers murder and that, in exchange, the prosecutor agreed to waive the death penalty in the Rogers case. (R. 243-45, 334-36.) Therefore, Ferguson had been convicted and sentenced long before he testified against Petitioner. There is no evidence that the state agreed to waive the death penalty against Ferguson in the Rogers case in exchange for his agreement to later testify against Petitioner.

Finally, the only evidence regarding the state's alleged agreement to release Petitioner if Ferguson gave a statement was his testimony that he believed this would happen if he talked to police. An officer testified that no one gave Ferguson any indication that, if he cooperated, Petitioner would not be charged. (R. 593.) In any event, Ferguson's desire to bring about Petitioner's release obviously was no longer a consideration when he chose to give incriminating testimony against her at her jury trial.

In short, nothing in Ferguson's or the officers' testimony, the questioning by the prosecutor or Petitioner's attorneys, the record presented to the Arkansas Supreme Court or the current record before this Court, supports Petitioner's allegation that Ferguson gave perjured testimony at her trial in exchange for concessions or leniency by the state regarding the charges against him. Petitioner has not met her burden of demonstrating that any such agreement existed, that Ferguson's testimony was false, that the prosecutor was less than truthful in stating that no agreements existed, or that the prosecutor withheld information about any agreement.

Second, even if the Court accepts Petitioner's assertion that an agreement existed between Ferguson and the prosecutors and that she did not personally know about it until after her direct appeal, her pleadings state that *her attorneys* knew about this "deal" before

9

then. Specifically, she alleges that her "trial counsel had numerous letters from Edward Ferguson in their possession" and that the "contents of these letters detailed evidence clearly demonstrating a deal between Edward Ferguson and the State and the various changes in his testimony." She says the existence of these letters and their contents were concealed from her.[6] (See docket entry #1, p.6; docket entry #12, p.23.)[7]

Therefore, if Ferguson's testimony at Petitioner's trial was at odds with letters in counsel's possession or if the prosecutor misrepresented the existence of any agreement with Ferguson, this could have been raised at trial as a matter of impeachment or as a prosecutorial misconduct claim on direct appeal. Petitioner's failure to raise this claim in the appropriate forum (at trial and/or in her direct appeal) was thus due to her counsel's inaction, rather than the prosecutor's failure to disclose to her personally any evidence of an agreement with Ferguson.

Ineffective assistance of trial or appellate counsel may constitute cause to lift a procedural bar. Murray, 477 U.S. at 488. However, a habeas petitioner cannot rely upon ineffectiveness of counsel as cause to excuse a procedural default where he or she has not properly presented that ineffectiveness claim to the state courts. Edwards v. Carpenter, 529 U.S. 446, 453 (2000) (ineffective assistance of counsel asserted as cause for procedural default of another federal claim can itself be procedurally defaulted); Watts v. Norris, 356 F.3d 937, 941 (8th Cir.), cert. denied, 543 U.S. 904 (2004).

---

[6]This is the basis for an independent claim of ineffective assistance as raised in Ground 4.

[7]In her pro se pleadings, Petitioner said she was attempting to obtain copies of the letters and that they would soon be available for review (docket entries #1, p.6; #12, p.23). She asked for permission to develop this issue and amend her petition through counsel. Counsel was subsequently appointed for Petitioner and amended the petition, but the letters were not submitted.

In her Rule 37 proceedings, Petitioner argued that her attorneys were ineffective for failing to reveal to her "certain letters" written by Ferguson or to introduce the letters at trial. Although not specifically addressing this claim, the lower court found that, in regard to Petitioner's allegations of a "bargain" between Ferguson and the prosecutor, she had made conclusory allegations with no factual support.   (Resp't Ex. A, ¶ 6.)   The Arkansas Supreme Court was unable to review the ineffective-assistance claim on appeal because Petitioner did not "produce a record on appeal sufficient to demonstrate error."  Arnett II, supra at *2. The court recited the well-established standard for evaluating claims of ineffective assistance of counsel, as set forth in Strickland v. Washington, 466 U.S. 668 (1984): "[A] defendant must first show that counsel's performance 'fell below an objective standard of reasonableness,' and, second, that the errors 'actually had an adverse effect on the defense.'"  Arnett II, supra at *1.  The court then stated:

> Arkansas Supreme Court Rule 4-2(a)(6) requires an appellant to include an abstract of the record consisting of the material parts of the record that are necessary to an understanding of the questions presented for decision.  The abstracting requirement applies to those appellants who proceed *pro se.*  It is the appellant's burden to produce a record sufficient to demonstrate error.  With the exception of material included in the addendum, the record on appeal is confined to that which is abstracted.  We will not explore the record for prejudicial error.
>
> ....
>
> ... Without a full synopsis abstract of the letters that appellant purports are "material" to her defense, we cannot assess appellant's claims of ineffectiveness under the standard set forth in Strickland.

Arnett II, supra at *1-*2 (citations and footnote omitted).  The Arkansas Supreme Court was thus unable to review the merits of Petitioner's ineffective-assistance claims.

As cause for this default, Petitioner contends that the law library at the ADC unit where she was housed was inadequate for her to properly present this claim to the state courts.[8]  She says that, at the time of her Rule 37 appeal, the library had no current case law or court rules, no trained or skilled law clerks, and an inmate attorney who refused to assist in any lawsuits against the state.   She says the person assisting her had little or no knowledge about the state appellate courts' abstracting requirements.

"Out of respect for finality, comity, and the orderly administration of justice," the procedural default rules preclude a federal habeas court from substantively considering any issue that a state court has already resolved on an independent and adequate state procedural ground.  Dretke v. Haley, 541 U.S. 386, 388, 392-93 (2004); Clemons v. Luebbers, 381 F.3d 744, 750 (8th Cir. 2004), cert. denied, 126 S. Ct. 41 (2005).  It is a long-standing practice of the Arkansas appellate courts to limit the record on appeal to what is abstracted.  Baker v. State, No. CR 04-542, 2005 WL 1041145 (Ark. Sup. Ct. May 5, 2005); Williams v. State, 56 S.W.3d 360, 364 (Ark. 2001); Neal v. Brandon, 85 S.W. 776, 777 (Ark. 1905) ("no matters will be considered except those properly abstracted"). The state appellate courts have stated repeatedly that they will not reach the merits of an issue when the appellant, whether pro se or represented by counsel, has failed to abstract documents or proceedings that are necessary for an understanding of the issue.  E.g., Baker, supra; Williams, 56 S.W.3d at 364.

Accordingly, the state procedural rule applicable to Petitioner's Rule 37 appeal required an appellant to submit an abstract consisting of "an impartial condensation,

---

[8]This is also the basis for an independent claim as raised in Ground 3.

without comment or emphasis, of only such material parts of the pleadings, proceedings, facts, documents, and other matters in the record as are necessary to an understanding of all questions presented to the Court for decision."  Ark. Sup. Ct. R. 4-2(a)(6) (2001); see also Rule 4-2(b)(3) (if abstract is flagrantly deficient, the judgment may be affirmed for noncompliance with abstracting rules).  This rule was not new.  See Richardson v. State, 671 S.W.2d 164, 166 (Ark. 1984); Neal, 85 S.W. at 777 (1905 case quoting then-existing rule which required an abstract "setting forth the material parts of the pleadings, proceedings, facts and documents upon which [the appellant] relies, together with such other statements from the record as are necessary to a final understanding of all questions presented to this court for decision").

Rule 4-2(a)(6) was specifically cited and relied upon by the Arkansas Supreme Court in deciding Petitioner's post-conviction appeal, the rule and the consequences of noncompliance are firmly established and consistently followed by the Arkansas courts, and Petitioner does not argue otherwise.  Petitioner alleged that her counsel was ineffective for failing to reveal certain letters to her, yet did not abstract the letters or, apparently, provide any synopsis at all to the appellate court.  To show sufficient prejudice under Strickland, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694.  The record presented by Petitioner on appeal was inadequate for the Arkansas Supreme Court to decide the substantive issue before it.  Therefore, the Court finds that the Arkansas Supreme Court's decision (finding Petitioner's ineffective-assistance claims defaulted) rests on adequate and independent state law grounds that may not be disturbed on federal habeas review.  See Taylor v. Norris, 401 F.3d 883, 885-

13

86 (8th Cir. 2005) (refusing to consider federal habeas claim that the Arkansas Supreme Court had declined to review due to the petitioner's failure to comply with the state's abstracting requirement, and finding that the Arkansas Supreme Court's decision was "supported by independent and adequate state law grounds that we may not disturb").

The only questions remaining on this issue are whether Petitioner can show cause and prejudice for the procedural default of her ineffective-assistance claims, or actual innocence. Clemons, 381 F.3d at 750-51. It is well-settled that pro se status, lack of education, below-average intelligence, or any unfamiliarity with the intricacies of the law or legal procedure are not sufficiently *external* to a petitioner to constitute cause excusing a procedural default. Sherron v. Norris, 69 F.3d 285, 289 (8th Cir. 1995); Cornman v. Armontrout, 959 F.2d 727, 729 (8th Cir. 1992); McKinnon v. Lockhart, 921 F.2d 830, 832 n.5 (8th Cir. 1991); Smittie v. Lockhart, 843 F.2d 295, 298 (8th Cir. 1988). Moreover, because there is no constitutional entitlement to counsel in state post-conviction proceedings, the denial of or ineffectiveness of counsel in connection with such proceedings cannot constitute cause excusing a procedural default. Coleman, 501 U.S. at 752, 757; Taylor v. Bowersox, 329 F.3d 963, 971 n.13 (8th Cir. 2003), cert. denied, 541 U.S. 947 (2004).

Conceivably, prison library inadequacies may be so extreme as to amount to the denial of access to the courts, which may be imputed to the state and constitute cause to excuse a procedural default. Lamp v. Iowa, 122 F.3d 1100, 1105 (8th Cir. 1997). However, where the state provides a prisoner with the capability of bringing his challenges before the courts and he has "meaningful access to the post-conviction court," no cause has been established. Id.; see also Williams v. Norris, 80 Fed. Appx. 535, 536 (8th Cir.

2003).  Here, the lack of current case law or procedural rules should not have prevented

Petitioner from complying with abstracting requirements which have been in place in some

fashion for at least 100 years.  Furthermore, although modifications were made to the

abstracting rules in 2001, they were not applied to Petitioner's Rule 37 appeal because the

record was lodged before the effective date of September 1, 2001.[9]  See Arnett II, supra

at *1 n.1.

Petitioner also asserts that she is actually innocent of the charges against her, which

may constitute an exception to the cause-prejudice requirement (docket entry #12, pp. 18,

24-25).  To pass through the actual innocence gateway and permit federal habeas review

of otherwise defaulted claims, a petitioner's case must be "truly extraordinary."  Schlup v.

Delo, 513 U.S. 298, 327 (1995).  To fit within this narrow exception, a habeas petitioner

must (1) support his allegations of constitutional error with new reliable evidence not

presented at trial and (2) show, in light of the new evidence, "that it is more likely than not

that 'no reasonable juror' would have convicted him."  Id. at 324, 329.

In support of her actual-innocence claim, Petitioner refers to the prosecutor's

allegedly undisclosed agreement with Ferguson, as well as certain facts surrounding the

circumstances of her arrest, which she says her attorneys failed to bring forward.

The evidence surrounding her arrest is admittedly not "new," as it was clearly

available to Petitioner and her counsel at the time of trial.  See Nance v. Norris, 392 F.3d

284, 291 (8th Cir. 2004) (no actual-innocence showing with information that was available

---

[9]The modified rules require the appellate courts to allow an appellant an opportunity to cure any abstracting deficiencies before affirming due to an insufficient abstract.  See Ark. R. Sup. Ct. R. 4-2(b) (2002).

at trial, on direct appeal and throughout post-conviction proceedings), cert. denied, 126 S. Ct. 133 (2005); Hall v. Luebbers, 296 F.3d 685, 698 (8th Cir. 2002) (no actual-innocence showing with evidence that was "neither new nor sufficient" under Schlup standard); Morris v. Dormire, 217 F.3d 556 (8th Cir. 2000) (evidence not new if available at trial or "could have been discovered earlier through the exercise of due diligence").

The only arguably new evidence to which Petitioner refers is the alleged October 2000 letter from Ferguson about his purported deal with the prosecutor.  While evidence of such a deal might have been useful in further impeaching Ferguson's testimony against Petitioner, it is certainly not sufficient to demonstrate that, if it had been presented at trial, it is more likely than not that no reasonable juror would have convicted her of the crimes at issue.  In addition to Ferguson's testimony, the state presented four statements made by Petitioner where she admitted: that she knew Rogers was going to be robbed because they thought he had money and she saw Ferguson's gun; that she lured Rogers to the location where Ferguson shot him and took his wallet; that she followed Ferguson in her vehicle when he moved Rogers' van and body to a more secluded area; and that she assisted in the disposal and destruction of evidence relating to the deaths of Higgins and Rogers.  Arnett I, 27 S.W.3d at 724.

The evidence of which Petitioner speaks would not establish her innocence, but rather would present additional matters for a jury to consider in assessing the credibility of the other evidence against her.  See Johnson v. Norris, 170 F.3d 816, 818 (8th Cir. 1999) (actual innocence exception inapplicable where there were discrepancies between trial testimony and current statements, but new evidence was not exculpatory); Allen v. Nix, 55

16

F.3d 414, 417 (8th Cir. 1995) (exception inapplicable where evidence only tended to impeach other testimony and only indirectly supported the petitioner's version of facts).

In summary, Petitioner defaulted her prosecutorial misconduct claim by failing to raise it in her direct appeal, and she has failed to demonstrate cause due to either a state-created impediment or ineffective assistance of counsel.  The procedural default cannot be attributed to the state because Petitioner's attorneys allegedly knew about the purported agreement between the prosecutor and Ferguson.  Furthermore, Petitioner cannot rely upon any deficient conduct of her attorneys in this regard to excuse her default because any such ineffective-assistance claim is itself procedurally defaulted.  Specifically, by not complying with the Arkansas Supreme Court's abstracting requirements, Petitioner defaulted her claim that counsel was ineffective for failing to disclose to her letters about Ferguson's alleged agreement with prosecutors.  She has failed to demonstrate cause and prejudice for this procedural default, or actual innocence.

C.    Prejudice.

Even if the Court were to find that Petitioner has demonstrated cause for her default of the prosecutorial misconduct issue, she still fails to establish the prejudice component. To demonstrate prejudice, a petitioner must show, "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982) (emphasis in original); see Carroll v. Schriro, 243 F.3d 1097, 1102-03 (8th Cir. 2001).  In the context of a defaulted Giglio/Brady claim, unless the suppressed evidence is "material," its suppression does not give rise to sufficient prejudice to overcome the procedural default.  Strickler v. Greene, 527 U.S. 263,

282 (1999).  As stated earlier, this means Petitioner must show that "'there is a reasonable probability' that the result of the trial would have been different if the suppressed documents had been disclosed to the defense."  Id. at 289.

There is no doubt that evidence of a leniency-for-testimony agreement between the prosecutor and Ferguson would have impeachment value.  However, as explained earlier, Petitioner has failed to establish that any such agreement existed.  She has also failed to demonstrate that evidence about any agreement was suppressed by the prosecution.  The prosecution satisfies its duty to disclose exculpatory material in its possession by revealing the material to the defendant's counsel, regardless of whether counsel shows the material to the defendant.  United States v. Flynn, 87 F.3d 996, 1003 (8th Cir. 1996).  In her Rule 37 proceedings and here, Petitioner has asserted that her trial attorneys had letters in their possession about Ferguson's deal with the prosecutor.  Finally, Petitioner has not demonstrated that the information was material, i.e., a reasonable probability that evidence about Ferguson's alleged deal would have resulted in a different outcome at Petitioner's trial.  As set forth earlier, Ferguson's testimony was only part of the evidence against Petitioner.  Moreover, Petitioner's counsel thoroughly and quite competently attacked Ferguson's credibility through extensive cross-examination.

Petitioner has thus failed to establish that the prosecutor's alleged nondisclosure actually and substantially prejudiced her trial.

D.    Conclusion.

Petitioner has failed to demonstrate cause for the procedural default of her prosecutorial misconduct claim as raised in Ground 2, or prejudice from the alleged constitutional violation.  Additionally, as discussed above, Petitioner has failed to present

sufficient evidence to establish an actual innocence claim.   Ground 2 is procedurally barred.

IV.

Ground 3: Interference with State Proceedings.

Next, Petitioner asserts that the state unduly interfered with her state appellate and post-conviction proceedings in three ways: (1) the state prosecutor concealed evidence which would have supported a prosecutorial misconduct claim in her direct appeal; (2) the state supreme court declined to address her arguments in her post-conviction appeal; and (3) the state prison failed to maintain an adequate law library or legal assistance. Respondent says these claims are procedurally defaulted, and Petitioner says she had no opportunity to raise them in state court.

Petitioner's first subclaim has already been discussed.  It is procedurally barred.

Although she appears to be correct that she had no state forum for litigating a claim of state interference with her post-conviction appellate proceedings, this does not mean she is entitled to federal habeas relief.  A federal habeas court is not an appropriate forum for a prisoner who wishes to challenge, as an independent claim, the process afforded him in state post-conviction proceedings.  Under 28 U.S.C. § 2254(a), a federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  An attack on the constitutionality of procedures employed in collateral, state post-conviction proceedings does not test the legality of a conviction or sentence.  Petitioner is not imprisoned because her constitutional rights may have been violated in her Rule 37 proceedings, but because

19

she was duly convicted and sentenced at a criminal trial.  Therefore, it is well-established that "infirmities in the state's post-conviction remedy procedure cannot serve as a basis for setting aside a valid original conviction. ...Errors or defects in the state post-conviction proceeding do not, ipso facto, render a prisoner's detention unlawful or raise constitutional questions cognizable in habeas corpus proceedings."  Williams v. State, 640 F.2d 140, 143-44 (8th Cir. 1981); see also Gee v. Groose, 110 F.3d 1346, 1351-52 (8th Cir. 1997); Jolly v. Gammon, 28 F.3d 51, 54 (8th Cir. 1994); Williams-Bey v. Trickey, 894 F.2d 314, 317 (8th Cir. 1990).

Similarly, her claim about the law library inadequacies does not test the legality of her custody and is thus not a cognizable independent federal habeas claim.  It is relevant only in the context of establishing cause for her procedural defaults, which has already been discussed.

Ground 3 must be dismissed in part as procedurally defaulted and in part as failing to raise a cognizable federal habeas claim.

V.
Ground 4: Ineffective Assistance of Counsel

In Ground 4, Petitioner says her trial and appellate counsel were ineffective for withholding from her numerous letters from Ferguson which detailed an agreement with the prosecution and the various changes in his testimony.  For the reasons set forth above, this claim is procedurally barred.

Liberally construing her pleadings, she also alleges that her trial counsel was ineffective for failing to adequately litigate a motion to suppress her pretrial statements

(docket entry #12, pp.7-8, 18).[10]  However, this particular ineffective-assistance claim was not raised at all in Petitioner's Rule 37 proceedings.  The record shows that, in connection with the suppression issues, she argued only that counsel was ineffective for failing to subpoena the trial judge to show that she could have been brought to court for her first appearance earlier.  (Resp't Ex. A, ¶¶ 4-5; Arnett II, supra at *1.)  She made no other arguments regarding the suppression motion or hearing.  This claim is procedurally defaulted and, again, she fails to meet the cause-prejudice requirement or demonstrate actual innocence.

Ground 4, in its entirety, is procedurally barred.

VI.
Ground 1: Fourth Amendment Claim

In Petitioner's remaining claim, she asserts that her convictions were obtained pursuant to an unlawful arrest, a pretextual search of her vehicle, and her subsequent illegally obtained statements/confessions.  She alleges that her rights were violated under the Fourth Amendment of the United States Constitution, the Arkansas constitution, and federal and state laws.  This claim was presented and rejected in Petitioner's direct state court appeal, and Respondent asserts that the Arkansas Supreme Court's decision is entitled to deference here pursuant to 28 U.S.C. § 2254(d).

---

[10]She argues that counsel was ineffective for failing to object to the sheriff's hearsay and perjured testimony at the suppression hearing; failing to subpoena Chief Beasley, a tow truck driver, and towing company records; failing to interview Beasley; failing to conduct "a proper investigation"; and failing to let Petitioner testify at the suppression hearing about the circumstances of her arrest and transport to Arkansas from Missouri.

21

A.    State Court Proceedings.

Before trial, Petitioner filed a motion to suppress her four statements.    A

suppression hearing was held, at which she was represented by two attorneys.    The trial

court denied the motion, stating that although the circumstances were "troubling," there

was no illegal arrest.    The court found that Petitioner was not arrested in Missouri and that

she instead "accepted a ride back into Arkansas with [the] Chief of Police of Cardwell,

Missouri, under the impression that she would be going to see her children and be free to

go about her business when, in fact, the Sheriff was aware that was a mistaken

impression; that she would [instead] be placed under arrest [once she arrived in

Arkansas]."   (R. 810-11.)   On appeal, the Arkansas Supreme Court affirmed, stating:

> When a trial court's denial of a motion to suppress is challenged, our
> court makes an independent examination of the issue based on the totality
> of the circumstances and views the evidence in the light most favorable to
> the State. Muhammad v. State, 988 S.W.2d 17, 19 ([Ark.] 1999).   We
> reverse only if the decision to deny the motion to suppress was clearly
> against the preponderance of the evidence.  Id.
>
> Arnett claims that her arrest was illegal because she was arrested in
> Missouri without a warrant and transported across the state line into
> Arkansas.   It is well-established that an Arkansas law enforcement officer
> cannot make a warrantless arrest outside of the territorial limits of his
> jurisdiction without statutory authority.  See Henderson v. State, 953 S.W.2d
> 26 ([Ark.] 1997).   No statutory authority applies to this case.   Nevertheless,
> we conclude that Arnett's argument must fail.
>
> In support of her contention that she was illegally arrested in Missouri,
> Arnett relies on the testimony of Sheriff Dan Langston that he would not have
> allowed her to leave had she tried to do so in Missouri.   Arnett's reliance on
> this statement, however, is misplaced because the subjective beliefs and
> opinions of other persons, including law enforcement officers, regarding
> whether a person is free to leave are irrelevant.  See Ohio v. Robinette, 519
> U.S. 33, 38 (1996) ("[s]ubjective intentions play no role in ordinary, probable
> cause Fourth Amendment analysis").   A person is "seized" under the Fourth
> Amendment if "a reasonable person would have believed that [s]he was not
> free to leave."  Perry v. State, 794 S.W.2d 141, 142 ([Ark.] 1990).

22

> We agree with the State that the circumstances do not support a finding that Arnett was arrested in Missouri.  There was no evidence presented that Arnett herself had the belief that she was not free to leave while she was in Missouri.  To the contrary, the evidence shows that she repeatedly stated that she wanted to go back to Arkansas and accepted an offer from Chief Beasley to drive her back to Arkansas because she was afraid of Ferguson and wanted to see her children.  At all times during the encounter in Missouri, she was aware that the men were plain-clothed police officers.  However, no signs of arrest such as force or arresting language were manifested to her by the police officers, and she voluntarily went with Chief Beasley back to Arkansas.  Once she was in Arkansas, she was legally arrested by a deputy of the Greene County Sheriff[']s Department.  We cannot say that a reasonable person would have believed she was arrested in Missouri under these circumstances.  See Perry v. State, supra.  The trial court was correct in denying Arnett's motion to dismiss the statements based on an underlying illegal arrest.

Arnett, 26 S.W.3d at 724-25 (parallel citations omitted).

>    B.    Stone v. Powell.

In Stone v. Powell, 428 U.S. 465 (1976), the United States Supreme Court held that, where a state prisoner has been afforded "an opportunity for full and fair litigation of a Fourth Amendment claim, [he] may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Id. at 494.  An opportunity is "full and fair," thus barring federal habeas review, unless (a) the state has provided no procedure for raising Fourth Amendment claims, or (b) the defendant was foreclosed from using the state procedure because of an "unconscionable breakdown" in the system.  Willett v. Lockhart, 37 F.3d 1265, 1273 (8th Cir. 1994).

A federal habeas court is not required to conduct an evidentiary hearing on a Fourth Amendment claim or to review the state court records to determine if the state's factual findings are fairly supported by the record.  Id. at 1270-71.  The habeas court is not to

23

consider whether full and fair litigation of the claims *in fact* occurred but only whether the state provided an opportunity for such litigation.  Id. at 1270.  The Stone bar applies even where the state court has erred in deciding the legal merits of a Fourth Amendment claim.  Id. at 1268; see Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997).

Stone is a "categorical limitation on the scope of the exclusionary rule" and thus precludes a federal habeas court from granting relief on a Fourth Amendment claim even where the state has failed to argue that the claim is Stone-barred.  Woolery v. Arave, 8 F.3d 1325, 1326-28 (9th Cir. 1993).  Moreover, because Fourth Amendment claims are subject to the strictures of Stone, it is not necessary to analyze those claims pursuant to the deferential standards of § 2254(d).[11]  Cabrera v. Hinsley, 324 F.3d 527, 530 (7th Cir. 2003).

In this case, Petitioner, represented by two attorneys, raised her Fourth Amendment claim in state court through a pretrial motion, an evidentiary hearing was held, and Petitioner was provided the opportunity to present witnesses and make her arguments.  She received a ruling on the merits of her Fourth Amendment claim, which she then appealed.  The Arkansas Supreme Court then reviewed and decided the merits of the claim.  Right or wrong, the state court decisions cannot be reviewed here, nor can this Court reexamine the credibility of the witnesses who testified.  It is clear that Arkansas has a system available for raising Fourth Amendment claims and that Petitioner took advantage of that system.  Furthermore, she has not demonstrated the existence of any breakdown

---

[11]Under § 2254(d), a federal habeas court cannot grant relief on a claim previously adjudicated by a state court unless the state decision was contrary to clearly established federal law, an unreasonable application of that law, or based on an unreasonable determination of facts.

in the system which would reach constitutional dimensions.  See Willett, 37 F.3d at 1272. It is not this Court's function to determine if full and fair litigation actually occurred, but whether Petitioner was provided an opportunity for such litigation.  Here, she certainly had an adequate opportunity, through counsel, to present all relevant arguments at her suppression hearing or on appeal.  Accordingly, this Court cannot review Petitioner's Fourth Amendment claims. See Palmer v. Clarke, 408 F.3d 423, 437 (8th Cir.), cert. denied, 126 S. Ct. 755 (2005); Sweet, 125 F.3d at 1149; Poole v. Wood, 45 F.3d 246, 249 (8th Cir.1995); Willett, 37 F.3d at 1273; Cortis v. Kenney, 995 F.2d 838, 841 (8th Cir. 1993); Ferguson v. Jones, 905 F.2d 211, 213 (8th Cir. 1990).

Stone does not bar a claim that counsel was constitutionally ineffective in litigating a Fourth Amendment claim in state court.  Kimmelman v. Morrison, 477 U.S. 365, 383-83 (1986).  However, as explained earlier, Petitioner cannot advance such a claim here because she never did so in state court.

To the extent that Petitioner argues violations of the state rules of criminal procedure, state case law, or state and federal statutes regarding extradition, she cannot proceed.  Errors of state law do not provide a basis for federal habeas corpus relief. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Nance, 392 F.3d at 289; see 28 U.S.C. §§ 2241, 2254.  Additionally, improprieties or irregularities in the extradition process do not invalidate a subsequent conviction and thus cannot justify federal habeas relief.  Beachem v. Attorney General of Missouri, 808 F.2d 1303, 1304 (8th Cir. 1987); Mosby v. Mabry, 625 F.2d 809, 810 (8th Cir. 1980); Brown v. Nutsch, 619 F.2d 758, 762 (8th Cir. 1980); see Frisbie v. Collins, 342 U.S. 519, 522 (1952) ("the power of a court to try a person for a

crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction'").

In summary, none of Petitioner's claims regarding an allegedly illegal arrest can entitle her to federal habeas relief, and they must be denied.

VII.
Evidentiary Hearing

Petitioner requests that an evidentiary hearing be held in this proceeding so that she can present evidence to rebut the state courts' factual finding that Petitioner was not arrested in Missouri (including the credibility determinations made by the state courts), and so that she can introduce "further evidence that her trial counsel should have introduced" regarding her Fourth Amendment claim and the suppression issues (docket entry #15, pp. 2-4). Presumably, this would be evidence supporting her version of the underlying facts, as set forth in her pleadings and affidavit (attached to docket entry #12). She also asks for a hearing on the prosecutorial misconduct claim because evidence of Ferguson's alleged agreement with the prosecutor was not disclosed to her and could not have previously been discovered by due diligence (docket entry #12, pp. 24-25). She also says the trial court denied her Rule 37 post-conviction petition without a hearing, denying her the ability to present evidence in support of her ineffective-assistance claims, deficiencies which she apparently wants to correct here (docket entries #10, pp. 2-3 & #11, pp. 1-2).

As discussed above, Stone restrains this Court from holding an evidentiary hearing to relitigate the state courts' factual determinations regarding Petitioner's Fourth Amendment claims. This Court cannot hold a hearing and allow her to introduce new evidence on this claim.

26

Furthermore, a federal habeas court's power to conduct an evidentiary hearing on any other claim is "sharply limited" by statute. Cox v. Burger, 398 F.3d 1025, 1030 (8th Cir.), cert. denied, 126 S. Ct. 93 (2005). Where a habeas petitioner has failed to develop the factual basis of his claims in state court proceedings, the federal court "*shall not*" hold an evidentiary hearing unless the petitioner shows that his claims rely on "a factual predicate that could not have been previously discovered through the exercise of due diligence" *and* that "the facts underlying the claim[s] would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(A)(ii) & (B) (emphasis added). A failure to develop the factual basis of a claim in state court proceedings is established, and § 2254(e)(2)'s restrictions apply, when "there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." Williams v. Taylor, 529 U.S. 420, 432 (2000).

Petitioner failed to develop her prosecutorial misconduct and ineffective-assistance claims at the proper time and place in state court. According to her allegations here and in state court, letters about the prosecutor's alleged agreement with Ferguson were in her attorneys' possession at trial and at the time of her direct appeal, and she knew about those letters herself at the time of her post-conviction proceedings and raised a claim in this regard. She failed to produce them or apparently give any specific details about them. The state courts will not grant an evidentiary hearing where a post-conviction petition contains conclusory allegations. Garrett v. State, 759 S.W.2d 23, 24 (Ark. 1988). Even the October 2000 letter from Ferguson which she relies upon so heavily here was available during her state post-conviction proceedings, as her Rule 37 petition was not ruled upon

until November 27, 2000.  There is no indication that she tried to submit this letter to the state courts, nor has she produced it here.  Moreover, nothing shows that she ever argued in her state post-conviction proceedings that counsel was deficient in litigating her Fourth Amendment claims, much less presented any evidence in this regard.

Having "failed to develop" the factual basis of her current claims in her state proceedings, this Court can hold a hearing *only if* Petitioner complies with the balance of § 2254(e)(2)'s stringent requirements.  No contention is made that a new, applicable rule of constitutional law has been handed down, and Petitioner has not demonstrated that the factual predicates of her claims could not have been discovered with the exercise of due diligence.  Furthermore, she has not alleged any facts which would be sufficient to establish by clear and convincing evidence that no reasonable fact-finder would have found her guilty of capital murder and hindering apprehension.

Petitioner's requests for a hearing are denied.

## VIII.
### Conclusion

For the foregoing reasons, Petitioner's claims are procedurally barred or without merit.  This 28 U.S.C. § 2254 petition for writ of habeas corpus is, therefore, dismissed in its entirety, with prejudice.

IT IS SO ORDERED this 7th day of February, 2006.

UNITED STATES MAGISTRATE JUDGE